DECISION AND JUDGMENT ENTRY
Pam K. Robinson appeals her conviction in the Chillicothe Municipal Court for resisting arrest and assigns the following error:
 THE VERDICT OF THE JURY WAS AGAINST THE SUFFICIENCY AND WEIGHT OF THE EVIDENCE.
 Finding no merit in this assigned error, we affirm the judgment of the trial court.
In the early morning hours, appellant's son, Eric Sprouse, was involved in a domestic dispute with his fiancée. The Ross County Sheriff's Department was summoned to their residence, which was next door to appellant's residence. Mr. Sprouse ran into appellant's home and members of the Sheriff's Department eventually followed to arrest him. Because of their actions during this incident, the deputies also arrested appellant and her daughter, April Sprouse, for obstruction of official business and resisting arrest.[1]
After a trial, the jury returned a verdict of not guilty on the obstruction of justice charge but found appellant guilty of resisting arrest. The court sentenced appellant and she timely appealed her conviction.
In her sole assignment of error, appellant argues that the jury verdict was against the manifest weight of the evidence.[2] Specifically, she argues that the evidence presented at trial indicates that she was arrested for resisting the arrest of another, not for resisting her own arrest; however, since the trial court only instructed the jury on resisting arrest of self, the jury lost its way. We disagree.
When considering an appellant's claim that a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998),84 Ohio St.3d 180, 193. The reviewing court sits, essentially, as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting Tibbs v. Florida (1982), 457 U.S. 31,42. The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, keeping in mind that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982), 70 Ohio St.2d 79, 80; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The reviewing court may reverse the conviction if it appears that the fact finder, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. On the other hand, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169, syllabus. Questions of witness credibility are best left to the trier of fact.DeHass, supra.
R.C. 2921.33(A) provides that:
 No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another.
 The state presented Sgt. Torchick who testified that after he informed appellant she was under arrest, she continued pushing Deputy Mosley and they ended up on the floor in a scuffle while Deputy Mosley tried to secure her. Deputy Mosley testified that after Sgt. Torchick informed appellant that she was under arrest, Deputy Mosley put his hands on appellant to handcuff her. She pulled away from him, smacked at him and refused to allow him to gain control over her. After a short struggle on the ground, Deputy Mosley gained control and handcuffed appellant. Deputy Whitten testified that after appellant was informed she was under arrest she stated that she wasn't going anywhere and a scuffle ensued between her and Deputy Mosley.
Based on this testimony, we cannot conclude that the jury clearly lost its way when it found appellant guilty of resisting arrest. Three deputies testified that appellant was told she was under arrest and that she then struggled with Deputy Mosley to prevent her arrest. Clearly, there were some discrepancies in the state's witnesses' version of the events; however, these discrepancies generally pertained to the timing of certain events and who was present. The essential facts surrounding appellant's arrest were similar and, though appellant and the other defense witnesses denied the state's version of events, the jury was in a better position to judge the witnesses' credibility. The verdict was supported by substantial evidence and will not be overturned.
Appellant's sole assignment of error is overruled.
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 _______________________ William H. Harsha, Judge
Abele, P.J.: Concurs in Judgment and Opinion, Kline, J.: Concurs in Judgment Only
[1] A summary of the evidence is attached to our opinion as an appendix.
[2] Though appellant refers to "sufficiency" in the assignment of error itself, she makes no argument in her brief that the evidence was not sufficient to sustain a conviction. Therefore, we consider only whether the verdict was against the manifest weight of the evidence.
 APPENDIX
SUMMARY OF EVIDENCE
Sergeant Rick Torchick testified that he was dispatched to Eric's residence at approximately 2:11 a.m. When he arrived, there were two women and a man standing in the front yard. As soon as he exited his vehicle, the women started screaming that the man had a gun and was going to shoot it. The man turned around, looked at Sgt. Torchick, and ran to the backyard of the house. Sgt. Torchick pursued the man and saw him run into the house next door, shutting the door behind him. Sgt. Torchick decided to wait for backup and went to the front of the house where he could see the man walking back and forth between different rooms on the first level.
Deputies Mosley and Sexton arrived and the three officers knocked on the door. Appellant answered the door and Sgt. Torchick informed her that Eric ran in through the side door of the house, that he had a gun, and that he was going to shoot somebody. Appellant stated that Eric did not live there and Sgt. Torchick responded that he'd chased Eric into the house. Appellant denied Sgt. Torchick entry to the house but, following some pushing and shoving, the deputies entered the home.
As the deputies entered, April came downstairs. The deputies looked into the downstairs bedroom where appellant's boyfriend, Jim Eckle, was located but did not see Eric. Sgt. Torchick asked April if Eric was upstairs and stated that the deputies were going to go up and search for him. April denied he was upstairs. However, when Sgt. Torchick began to climb the stairs, she yelled upstairs and stated, "Come on down. They're going to come up and get you." Eric came down the stairs, was placed under arrest for domestic violence, and removed from the house. While he was being placed under arrest, Sgt. Torchick asked Eric what he had done with the gun but Eric did not respond.
Sgt. Torchick told April he was going to go upstairs and search for the gun in her bedroom where Eric was hiding. April told Sgt. Torchick that he was not going up there. Sgt. Torchick told April that if she didn't get out of the way he was going to arrest her for obstruction of official business. April still refused to move and Sgt. Torchick informed her that she was under arrest for obstruction of official business. April then ran to appellant, who was standing in the doorway to her bedroom, and hid behind her. Deputy Mosley went over and told appellant, "Pam, she's under arrest. Don't interfere or you'll be arrested." Appellant began pushing Deputy Mosley, yelling and screaming, "You're not arresting my daughter." Sgt. Torchick informed appellant she was under arrest and pulled April from the room and onto a couch. He pushed April's face down on the couch and handcuffed her. Deputy Mosley was on the floor, fighting with appellant. The two women were secured, appellant was placed in the back of Sgt. Torchick's vehicle, and the women were transported to the jail.
On cross-examination, Sgt. Torchick acknowledged that he never saw Eric with a gun and one was never found during the search of April's bedroom. Eric's jacket was found in that bedroom so the deputies knew he had been there; however, they had no reason to believe he'd been in any of the other upstairs rooms and did not search them. Sgt. Torchick testified that after he entered appellant's home with Deputies Mosley and Sexton, they drew their guns. He also admitted that Eric did not fight with the deputies when he came down the stairs, the deputies did not have an arrest warrant or a search warrant, and they did not ask April for permission to search her room. Sgt. Torchick believed that Deputy Whitten escorted Eric to the car after his arrest and then came back into the house. Sgt. Torchick testified that he placed April under arrest because she lied to him about Eric not being upstairs and because she refused to get out of the way when he informed her he was going to search her room. Sgt. Torchick stated that he did not attempt to obtain a search warrant because of the early hour and because of the extenuating circumstances by which he entered the home. Sgt. Torchick did not recall appellant ever crying or sitting on the bed. Throughout the incident, she was cursing at the deputies. Sgt. Torchick acknowledged that he knew appellant, April, and Jim Eckle from an incident several years earlier in which appellant's son was the victim of a crime.
Deputy John Mosley testified that he received a radio report from Sergeant Torchick stating that he had a male subject with a gun and needed assistance. Deputy Mosley arrived at appellant's residence and helped set up a perimeter around the house. Deputy Mosley was in the back of the house and Sgt. Torchick and Deputy Sexton were at the front door. When Deputy Mosley and Deputy Whitten entered the house, Sgt. Torchick had a male in handcuffs at the foot of the stairs. The man was escorted out of the house, possibly by Deputy Whitten, and Deputy Mosley and Sgt. Torchick went upstairs to search for the weapon, which they did not find. When they came downstairs, Sgt. Torchick began having trouble with April, whose conduct was out of control. Deputy Mosley recalled Sgt. Torchick warning April several times to desist in her conduct. After the final warning, April temporarily desisted and the deputies turned to exit the residence. However, April started acting up again and Sgt. Torchick said, "I told you time and time again. You're under arrest."
April then ran into the bedroom and stood behind appellant, using her for shelter. Deputy Mosley asked appellant to step aside and told her that April was under arrest. Appellant refused to let Deputy Mosley get to April and kept smacking his hand away when he reached for April. Sgt. Torchick and Deputy Mosley told appellant that if she didn't desist, she would be arrested for obstructing. They told her to step aside and she refused. Thereafter, Sgt. Torchick informed appellant that she was under arrest and told Deputy Mosley to arrest her. Deputy Mosley attempted to arrest appellant and she began pulling away and smacking at him. After a short struggle on the ground, Deputy Mosley finally gained control of her. While Deputy Mosley was trying to gain control of appellant, Sgt. Torchick and Deputy Sexton were struggling with April. Once the two women were under the deputies' control, they were escorted to the patrol cars. Deputy Mosley testified that appellant was in his cruiser and that she was very apologetic.
On cross-examination, Deputy Mosley testified that Sgt. Torchick was not in the vehicle with appellant when she was transported to the station and he did not believe Sgt. Torchick transported anyone. Deputy Mosley testified that he did not ask April for permission to search her room and he could not recall if any of the other deputies did. Deputy Mosley also testified that when he asked appellant to step aside after April ran behind her, she told him to get away from her daughter and that he was not going to arrest April. Deputy Mosley stated that Sgt. Torchick told April to stop her conduct several times or she would be arrested for disorderly conduct. During the altercations with appellant and April, Deputy Whitten was watching the other people in the house to ensure that none of them interfered with the arrests. Deputy Mosley testified that appellant was arrested at Sgt. Torchick's instruction because she was impeding the arrest of her daughter. April could have been holding onto appellant but Deputy Mosley could not be sure. Deputy Mosley did not recall seeing any injuries to appellant though he recalled that she was complaining about the handcuffs so he moved them from her back to her front.
Deputy Robert Whitten testified that he rode to the scene of the incident with Deputy Sexton. When he arrived, he and Deputy Mosley set up a perimeter on the outside of the house and Sergeant Torchick and another deputy went inside. When Deputies Whitten and Mosley heard a ruckus from inside the house, they entered. Deputy Whitten heard the officers calling for the suspect to come downstairs and April shouting that he was not there. Thereafter, Eric came down the stairs and was placed under arrest. Sgt. Torchick explained the reason for the arrest to April and she became belligerent. Sgt. Torchick then advised April that she would also be arrested if her antics did not cease. When April was informed she would in fact be arrested, she left the area and went to stand by appellant. As the deputies were attempting to take April into custody, appellant was objecting to the arrest of her daughter. She refused to allow the officers access to her daughter and had her hands up in the air while she made statements such as "No, get away from her" and "You're not taking her anywhere." At one point, she placed her hand on Deputy Mosley to prevent him from arresting April. Appellant was advised that she was going to be placed under arrest for obstructing the arrest of April and a scuffle ensued. Again, appellant made belligerent comments such as "I'm not going anywhere" and "You're not taking us anywhere." During this scuffle, Deputy Sexton and Sgt. Torchick were placing April under arrest.
On cross-examination, Deputy Whitten testified that he escorted one of the arrestees, possibly Eric, to the car and then went back to the door. However, the scuffle between appellant and Deputy Mosley occurred before Eric was taken to the vehicle. Eric was not taken to the car immediately after he came downstairs; the deputies were explaining why he was being pursued when the scuffle ensued. Deputy Whitten testified that he wasn't involved in the scuffle because he was watching a man and a teenager who were in the downstairs bedroom taking care of a baby. Deputy Whitten testified that he heard appellant being informed that she was under arrest for obstructing April's arrest. He did not recall April using appellant as a shield to prevent her own arrest but believed the two women were standing side by side.
Deputy Ray McKeever testified that when he arrived at appellant's residence, he saw Sgt. Torchick attempting to arrest April and Deputy Mosley attempting to arrest appellant. He did not, however, observe the events leading up to the arrests. Deputy McKeever observed Deputy Mosley on the floor with appellant. Deputy Mosley was attempting to handcuff appellant and the two were wrestling around. On cross-examination, Deputy McKeever testified that he transported April to the jail.
Eric Sprouse testified that he ran in the back door of his mother's house but did not shut the door all the way. Appellant's bedroom door was shut and he had no contact with her. Eric went upstairs into the hallway near his sister's room. After a couple of minutes, his sister exited her room and went downstairs. He heard her downstairs trying to find out what was going on. She then "hollered" for Eric to come down and stated that the deputies had their guns out and were going to come upstairs. Eric came down the stairs slowly with his hands in front of him and the deputies put him up against the wall, cuffed him and took him outside onto the porch. While he was being cuffed, appellant was sitting on her bed crying. One of the officers asked Eric if he had a gun and Eric told him that he did not. Deputy Sexton sat him down on the steps and was going to go inside and retrieve Eric's shoes when all the deputies went running back into the house. Deputy Sexton quickly put Eric in the cruiser and for about two or three minutes, Eric could hear screaming and a commotion inside the house. Eric could see the deputies moving around inside but did not see the altercation between appellant and the deputies. April came outside in handcuffs and appellant came out a minute or two later.
On cross-examination, Eric testified that he did not hear anyone tell Sgt. Torchick that he had gun. However, he did hear his fiancée's sister call 911 and say that she knew Eric owned a gun. On redirect examination, Eric testified that he never had a gun on him or took a gun to his mother's house.
April Sprouse testified that she woke up to go to the restroom and saw Eric standing in the hallway. She went downstairs and saw several deputies. When Sgt. Torchick asked her where Eric was, she responded that she did not know. Sgt. Torchick then pulled his gun out and was getting ready to go upstairs. April told Eric to come downstairs because the deputies had their guns pulled. Eric came downstairs and was arrested. All the deputies then went outside with Eric.
April was standing in the doorway to the front room and "somebody said something wrong" and Sgt. Torchick grabbed her. April testified that she ran into appellant's room and grabbed hold of appellant, either jumping on the bed or sitting on the side of the bed. Somehow April got on the floor and the deputies were wrestling with her and then let her go. She stood up and remained standing in appellant's room for a minute. When she walked out, she saw appellant on the ground. The deputies had control of appellant and April said, "You guys don't need to be treating my mom like this." Deputy Mosley then punched her in the chest while holding appellant down. Sgt. Torchick grabbed April, threw her on the couch, cuffed her, took her outside, and placed her in Trooper McKeever's car.
As a result of this altercation, April had a big bruise on her chest and her wrists were swollen from the handcuffs. She sought medical attention and photographs were taken at the hospital. April testified that appellant did not attempt to assist her in resisting arrest and she ran to appellant because she did not want to go to jail. April also testified that she was not told why she was being arrested until she arrived at the jail.
On cross-examination, April testified that she did not want the deputies to search her room and she tried to prevent them from doing so. She further testified that she was never told she was under arrest, the deputies just cuffed her. On re-direct examination, April testified that she gave Sgt. Torchick permission to search her room after she was cuffed. Trooper McKeever then told Sgt. Torchick to let her go but Sgt. Torchick stated that she was going to jail.
James Eckle testified that appellant is his girlfriend. On November 28, 1999, he was asleep in the bedroom. Appellant entered the room and stated that there were flashing lights outside and that she didn't know what was going on. Mr. Eckle told appellant to just come back into the bedroom but there was a knock at the door and appellant went to answer it. Mr. Eckle walked into the wood burner room and saw Eric come down the stairs and get handcuffed. The deputies took Eric outside and sat him down on the porch right after they handcuffed him. Appellant was crying and Mr. Eckle told her that there was nothing they could do and they would go bail him out of jail if they had to. Appellant came back into the bedroom and was sitting on the side of the bed. Mr. Eckle heard April scream and the bedroom door flew open. April came in the bedroom and jumped into the middle of the bed, grabbing onto appellant. The deputies entered behind her. Appellant and the deputies were rolling around on the floor and April was trying to get away from them. The deputies were attempting to separate April and appellant but April was still holding onto appellant. When they got off the bed, they all went through the doorway and into the wood burner room. Mr. Eckle did not hear any of the officers tell appellant she was under arrest or see appellant try to fight with any of the officers. Also, Mr. Eckle did not see appellant assist April in resisting arrest.
Appellant testified that a noise awoke her and she got up to investigate but didn't see anyone. When she looked into the front room of her house, she saw flashing lights. She then heard a knock at the door and when she opened it, Sgt. Torchick was standing in the doorway. He asked about Eric and appellant told him that Eric wasn't there and she didn't know what was going on. Sgt. Torchick told appellant that he saw Eric come in the house and appellant responded that she didn't know anything about it. Sgt. Torchick pushed the door open and came in, stating that he wanted Eric and that Eric had a gun. Sgt. Torchick told appellant not to resist Eric's arrest and appellant responded that she had no intention of going to jail. A few minutes later, April came down the stairs and Sgt. Torchick started questioning her about Eric.
As soon as Eric came downstairs, the deputies handcuffed him and put him up against the wall. They took him outside and let him sit on the porch steps. Appellant returned to her bedroom and April was standing in the doorway of the porch watching the deputies put Eric in the cruiser. Appellant sat down on the side of the bed crying and Mr. Eckle told her that it would be all right and they would bail Eric out of jail. Appellant heard April screaming and the door flew open. April ran into the bedroom, jumped on the bed and grabbed appellant. April said, "They're going to take me to jail, mom." Appellant testified that when April grabbed onto her, she couldn't do anything. A deputy tried to separate them but April was holding on too tightly. They ended up on the floor and April somehow got free and appellant was thrown out of the bedroom, hitting her head on the closet door. Appellant testified that she was not trying to help April resist her own arrest. After the deputies got appellant to the floor and were wrestling with her, appellant was handcuffed and taken to jail. Appellant testified that she believes Deputy Mosley transported her to the jail.
Appellant testified that she was never told she was under arrest. She further testified that her arm was bloody and she requested emergency services but the deputies denied the request. After she was released from jail, April took appellant to the emergency room. Appellant's blood pressure was elevated and her shoulder was injured. Appellant participated in physical therapy for her shoulder injury but ultimately required surgery.
The state called Sgt. Torchick on rebuttal. Sgt. Torchick testified that he was mistaken in his earlier testimony when he stated that he transported appellant to the jail. He testified that appellant was originally placed in his car but was taken out to adjust her cuffs and then placed in Deputy Mosley's vehicle. Sgt. Torchick also testified that he told April she was under arrest and he heard Deputy Mosley place appellant under arrest. On cross-examination, Sgt. Torchick testified that he believes Deputy Mosley was already in the house when Eric was taken into custody but there was a lot of confusion so he may be mistaken.